Why don't you, counsel, please identify yourselves. Morning, Judge. Morning, Justice. This is Michael DiDomenico for the Appellant, Veronica Durdove. And the Appellee? Good morning, this is Mayra Futris with Futris Law Office on behalf of the Appellee. Okay, we are here today, you are here today in front of the First District Appellate Court, the Second Division in the case of In re the Marriage of Veronica Durdove and Eric Durdove. The way that we are handling, everybody's doing it a little bit different with the Zooms, but the way we're doing it in our division is that we're giving each advocate 10 minutes uninterrupted before we ask questions, if any. It's not, we don't always ask questions, but we'll give you 10 minutes uninterrupted so you can get your arguments out. And I would ask that the Appellant reserve, you know, three, four or five minutes, something like that for rebuttal. With that, we'll hear from Mr. DiDomenico. Justice Levin, and may it please the Court again, Michael DiDomenico. Oh, and I'm sorry, I should say you're here also in front of me and my colleagues, Justice Aurelia Puczynski and Cynthia Cobbs. This is not a oh-so-lo-me-oh moment here. Good morning. To the panel, good morning again. And may it please the Court again, Michael DiDomenico for Veronica Dergoff. This is an appeal from a one-page post-dissolution judgment mod of reducing Mr. Dergoff's child support obligation for the party's two minor children from $2,776 a month to $1,567 per month. Despite the simplicity of the relief afforded below an issue here, there's a lot going on here, and there's a lot to discuss, and there's a lot to discuss. Mr. Dergoff filed a petition to modify child support, alleging that my client's obtaining of a job two or three years after the divorce entitled him to a modification or reduction of child support. Governing law on this is pretty familiar, but evolving, as we'll discuss. Child support modifications are governed by section 510 of our act, requires the showing of a substantial change in circumstances. The statute doesn't define what a change in circumstances, substantial change in circumstances is. The meaning is given sort of in the common law and the case law by the appellate court. If those cases demonstrate anything, it's really the sui generis nature of all divorce cases, and whether a substantial change in circumstances has occurred really depends on the particular facts and circumstances of the family before the court. This particular case requires this court, as we'll talk about in a minute, to take a hard look at some of this court's sister districts very recent case law on support modification proceedings. Whereas here, the original support order is entered under the old child support regime, and the modification is sought and would be adjudicated under the new income shares model for child support that took effect in July of 2017. The overarching concern in any modification of child support cases, the best interest of the children and all modifications must serve that end. I would suggest, as we'll talk about later, that this was something lost on the circuit court in this case. I wanna talk about the standard of review for a second. There's some debate in the briefs on what the proper standard is for this threshold issue of change in circumstances. Like all appellants, I will sell you on a de novo review, and I will cite to you the case, the Salvatore case from the second district, which made the point that in this context, when you have undisputed facts, and the issue becomes what is the legal effect of those uncontested facts, the review should be de novo. The key here is uncontested facts. There is no dispute as to what both parties were earning at the time of the divorce. There is no dispute what both parties are earning at the time of the modification trial at issue here. Is that always the case in divorce cases? No. A lot of times, divorce judges have to exercise their discretion just to adjudicate the facts, determine what either party makes. That's not what you have here. You have two W-2 earners in front of you, where it was clear that at the time of the divorce, Veronica was actually earning roughly $1,500 a year when she just started doing substitute teaching jobs after the divorce, or you could count her income as the imputed 20,000 a year, which was what was used to determine her maintenance. Her income at the modification trial was 58,380. Mr. Durdog's income at the time of the divorce was 211,000 gross, and at the time of the modification trial was 252. Those facts are not in dispute. So under the Salvatore thinking, we think that the appropriate standard review is de novo, considering all of those facts are uncontested and no discretion went into adjudicating those facts. So the issue becomes, has there been a substantial change in circumstances here? And again, Mr. Durdog petitioned for a modification solely on the basis that Veronica got a job and started earning $58,000 per year. My argument here is twofold. First, that Veronica found regular employment was an event contemplated by the parties in both their marital settlement agreement and their joint period agreement. This is a case, this points us directly to the Salvatore case. And I've been doing this long enough to know that we should never tell the appellate court or argue to the appellate court that a case is on all fours, that this is pretty close. In Salvatore, you had a custodial mother who was unemployed at the time of the divorce, got a job shortly thereafter, making a nominal sum of money. The father comes in after the adoption, after the enactment of the new child support law and says that because she obtained employment, he was entitled to a reduction and a new adjudication of an award under the new act. Looking at identical language in the parties marital settlement agreement and the joint period agreement, the second district says that regarding, notifying each other of where you're going to work in the future, looking at the health insurance provisions of the agreement that it would come through employment, that everybody contemplated that the custodial mother there would become employed. And that's exactly what happened here. But there's something more afoot and more telling that Veronica obtaining employment was something that was contemplated here. And that's the maintenance provisions. Here, there's a five-year maintenance package. The first four years, she was imputed $20,000 for purposes of calculating her maintenance. For year five, she was imputed $65,000 per year. Well, what does that mean? That means that everybody understood that by year five, she had the capability and would likely be earning $65,000. We go to trial on a modification petition three years later and she's actually earning $58,000 and change. So how is it that, so it defies credulity that a substantial change in circumstances occurred when she was doing exactly what the parties thought that she would do. And that is exactly the type of contemplated and expected event that the Salvatore case found determinative of the issue. And there's good reasons for that. The court looked at the policy statement in the act that the adoption of the, or the enactment of the income shares model cannot itself be considered a change in circumstances. And they interpreted that to mean that, well, they interpreted, they looked at the new act and they recognized the material differences between, and when I say material difference, I mean the materially lower support awards that come out of the income shares model, the new model versus the old model. And so if the party wants the benefit of the new act, the change in circumstances better be really, really substantial because everybody understands that the income is going to, or the child support order is going to be significantly reduced. And that's because the income shares model looks at both parties' income, not just the obligor as in the prior statute. In addition, the court, the certain court in finding a change in circumstances also found that Mr. Garga's income had gone up. And that also substantiated the finding of a substantial change in circumstances. That's wrong too under a third district case called Connolly. That case had an identical true up provision for child support that Mr. Durdolph has here. Mr. Durdolph was obligated in the dissolution judgment to pay a base amount of child support, which represented 28% of his base salary, plus 28% of any additional income that he earned. Third district says under the, when you enter into a true up provision like that, his increased income could never be a change in circumstances, and that's a third district case. And so the court was wrong to also indicate that Mr. Durdolph's income was a grounds to find a substantial change in circumstances. My other, the other part of the argument here is that, you know, if the contemplation, if it's not contemplated, then the change in circumstances here just wasn't substantial enough to warrant a modification. Let's look at the undisputed facts again. For purposes of calculating maintenance, when she walked out of the divorce court, they imputed $20,000 to her. Mr. Durdolph was making $191,000 or $211,000 a year. That's a difference of $191,000. At the modification trial three years later, Veronica was actually making $58,000. Eric was, Mr. Durdolph was making 252. That's a difference of $194,000. 191 difference walking out of divorce court, 194 walking back into divorce court at the modification trial. So what exactly has changed? Nothing. Not only is this not a substantial change in circumstances, it isn't a change at all. And this puts to one side the fact that Mr. Durdolph's net worth is double that of my client. The court, and going back to the imputation of the finding regarding Mr. Durdolph's income, this sort of demonstrates how backwards sort of the court got this. Because finding that Mr. Durdolph's income, the increase in his income also justified a finding of a substantial change in circumstances. It just doesn't make any sense. If anything at all, it put an exclamation point on that there wasn't a change in circumstances because the increase in his income brought the income disparity between the two parties to the same level it was at the time of the divorce. All of this, take all of these facts with the fact and the party's agreement that Veronica was the two children's primary caretaker and that they would continue to reside by agreement with the parties in one of the most expensive school districts in this country, Kenilworth. And the fact that in May, 2020 of last year, Veronica's non-modifiable maintenance would get cut by $29,000 per year. Taking all of these things into consideration, the court's finding of substantial change in circumstances is wrong as a matter of law because it became overly focused, singularly focused on these nominal changes in income to the exclusion of the bigger picture. And I would suggest to you that the case law that we've been discussing and it's discussed in the brief that the substantial change in circumstances analysis as these cases have evolved, especially with the adoption or the passage of the new child support laws and the courts recognizing the material reduction that mothers like Veronica potentially have to accept is that the 510 analysis is becoming much more holistic. It's becoming much more informed in the sense that we're looking at all of the facts and circumstances of the parties. We're looking at what was contemplated. We're looking at what's in the best interest of the children. We're looking at the income disparity and what it was at the time of the divorce and at the modification trial. It's all of these things together that the courts are looking at now to determine if there's ultimately been a change in circumstances. What the blue brief tries to sell you on and what the circuit court did here was really look at just one piece of the puzzle. There was some nominal income changes. And what they want you to believe is that, if one part of this is different, the whole thing needs to change. And we just don't feel. I think we've lost Mr. DiDomenico. Let's hang on and see. Gotta love technology. At least it's not a cat. We haven't had a cat yet. Okay. This is Levin. I'll try to contact him and see. Okay. All right. Okay. If each parent exercises 146 or more overnights per year, then the basic child support- Okay, Mr. DiDomenico, let me back up because we lost you there for about three or four minutes. So since you're getting to your second argument, why don't you restart that one? The second issue. So it's the overnights issue. Go to the overnights. Okay, so we'll start with the overnights issue. So if we're inside the new statute, okay, the overnights issue becomes the shared physical, what's called the shared physical care statute, which says if each parent exercises 146 or more overnights per year with the child, then the child support is going to be reduced even further from what the income shares model already lowers it to from the old model. The basic facts here are that there are two children and there were effectively two years of evidence of how much time each parent exercised parenting time. And I ask you to focus on the word exercise in the statute because that's key here. Note that the legislature did not use the word entitled. It isn't how many overnights anybody is entitled to. It is what you actually exercise. For 2017, there was no dispute that Mr. Durdock didn't meet the threshold number for either child. For 2018, there's no dispute that he did not meet the threshold for the older child, his daughter, but the court found that he met it as to the younger son, but only doing exactly what Mr. Durdock's lawyer asked him to do at closing argument, which was this to give back six overnights that he felt that he did not exercise, that he wanted to make up time for that he didn't get. There is no basis under our reading of the statute to effectively impute overnights to one party. The statute says what you exercise. If you choose not to exercise it, that is on you. The record is replete with plenty of evidence of my client's cooperation and trying to accommodate Mr. Durdock's work schedule and rearranging her life, but he chose not to exercise this amount of time that he needed to get to the 146 overnight threshold. To the extent that the circuit court went along with this imputation, seemingly suggesting that my client was unreasonable or was required to give him overnights whenever he asked, whenever he asked, I have two problems with that. Number one, there's an entire statute in our act called the Parent Abuse Statute that provides a specific remedy for this. It even provides specifically for makeup visitation if there's a finding that somebody is being unreasonable. There's no evidence of that here. I footnoted in the brief, there's a little string site from the record about the level of Mr. Durdock's cooperation to try and accommodating Mr. Durdock's parenting schedule and when he has to cancel and take the kids. The other part about it is there's nothing in the parent agreement mandating makeup visitation. There's a cooperation clause. She cooperated to the extent that she could, but she's not required to run her life around this. And if he wanted to get the benefit of the statute or to make the overnight or claim that she was being unreasonable, he should have filed a petition. He should have filed a petition under the Parent Abuse Statute to bring this to the attention of the court to try to afford the opportunity for him to get the makeup visitation to get to this 146 threshold. He didn't do that. And I do not read this shared physical statute to invite this debate about the intentions of the parties and should she have given makeup time and was she reasonable in giving it today or one day, but not another day. That is not what this statute requires to do. The statute says what you exercise, and there's no dispute that he didn't exercise the amount of time and the judge gave him the benefit of basically meeting the threshold as to one child, but not the other, and cut Ms. Dirdof's support obligations even more. Last point on the application of the new statute. If there was a set of facts that scream out for an upward deviation, it is this. Ms. Dirdof was losing her maintenance in year five. It was a $29,000 drop-off. She agreed, Mr. Dirdof agreed that the parties would continue, again, continue to reside in Kenilworth, one of the most expensive districts in this country. She agreed to a non-modifiable maintenance package, but a stream of support that would be sufficient for her to try to stay there, okay? The undisputed evidence was whatever, even on the top level maintenance and the child support she was getting, he was paying her, she was running at a monthly deficit to begin with, and had to borrow money from her parents to make the ends meet, and ran the real risk of having to uproot the children from the school, from the Kenilworth School District, which both parties agreed was contrary to their best interest. So, if you get inside the new statute and you just say that there has been a change in circumstances here, I would suggest to you that all the reasons that why one might find a substantial change in circumstances seemingly double as reasons why there should have been an upward deviation in this case, because for a gentleman making $252,000 a year to be paying $1,500 a month for two children to live in Kenilworth is on its face, ludicrous. The findings are against the manifest way to the evidence. All of this constitutes an abuse of discretion on the application of the new act, and it is clearly contrary to the best interest of the children. I have nothing further. Okay, my colleagues, questions, please. I have a question. The joint parenting agreement says that keeping, there's a lot of language in it, but one phrase says keeping in mind that there are times when rescheduling is required. So, you're telling us that, I think your words were, there's no evidence Veronica was unreasonable, and there's no evidence that she didn't help him reschedule. Well, the rescheduling was required. It wasn't optional. So, the six days that he missed because of work, which is a specific reason to miss a day, she was required to reschedule those. And there was evidence at the trial that she just did not reschedule those. I think the evidence was that she accommodated what she could. That's the problem with language like this about required in the future. She has a life too. She's entitled to plan what she wants to do on her time and plan what she wants to do with the kids. It's simply unworkable to interpret that to mean that she has to wait around to give to him what he chose not to exercise. Whether that be for work, whether that be for recreation, whatever reason he chose not to exercise, he didn't exercise. I don't think we can interpret the parent agreement, I don't think any parent agreement can be interpreted to mean that she has to wait around and give this guy every day he wants back whenever he wants it. And there's plenty of evidence in this record that she was more than accommodating on multiple occasions to the extent that she could. Well, I read the record and I can't find any place where she offered to reschedule those states at all. Not just because he wanted them on a certain day, new day, and she said, oh, no, we have Cubs tickets that day. There's no evidence in the record that she said, but pick another day, Eric, let's see if we can't work this out. I don't read her obligation to be any more than that. And again, I want to bring this back to- Stop counsel, any more than one. The JPA says rescheduling is required, that's the language. So, okay, he wants a day that she has Cubs tickets and she says, oh no, Eric, we have Cubs tickets that day, we can't pick another day. She didn't do that, she said, no, we can't do it, you can't have them that day. So, I don't see that she was meeting the required language and I don't see that she was willing to offer him other alternatives, which might've helped, but I don't see that in the record unless I've missed something. I did, we did string site, you know, in the brief, on page 30 of the brief, a bunch of times where, you know, she was accommodating to his request. But again, I want to bring it back. I think this is more about what the statute says. The statute says what he exercises. He chose not to exercise this statute. I don't believe that when you're strictly in the context of determining what the support of work, that this is what this inquiry devolves to. If he thought that she was being unreasonable, there's a whole, we adopted a whole section in the act to address this. He didn't bring this to anybody's attention. This only became an issue for him when he wanted to get the benefit of this statute and pay as little support as possible. That's the only time that this came up. There wasn't a letter, there wasn't anything filed in court. These people were in court for two years. He didn't say two words about this unless and until this, the application of this statute became an issue. So how important exactly was it to him? Well, there are the texts and there are indications that he asked to reschedule those six days. And I think that that shows he was trying to exercise his right to see his children and she denied it, which is contrary to the language of the JPA. Again, denying somebody visitation when it's her time, I understand that there's an obligation to try to make it up, but why does she have to forfeit her time because he forfeited his time? For purposes of this statute. And let me just go back because- Council, I just want to, of course, if rescheduling is required, she's going to have to change part of her time to accommodate his time. The same is true of him. If she needs to reschedule, he has to reschedule his time to accommodate her time. That's what the language of the JPA says. Rescheduling is required. I don't see how you get around that. So we should probably move on. Okay. Yeah, why don't you wrap up? I'm sorry, Justice Cobbs, any questions? No, I think we've heard enough. You've got the mute button, okay. Let me just say, Council, in terms of your argument on both issues, the standard of review is an important aspect of it because if we evaluate this case on an abuse of discretion standard as to either or both of these arguments, it's a considerably more difficult hurdle for you to get over. Would you agree with that? Of course, anytime we're on abuse of discretion review, it is a substantial hurdle. But again, I think Salvatore had it right when we're talking about uncontested facts. What about the fact that in Salvatore, the one party was unemployed and the other party was employed. And in this case, you've got a part-time employment and a full-time employment. Does that allow any distinction to be drawn so that a different standard of review would be applied than the one that they applied in Salvatore? I don't see it as a meaningful distinction. I mean, okay, so Salvatore seemed to suggest that she was totally unemployed and making zero where Veronica was just emerging from divorce after being a homemaker and giving up some of the best years of her professional life to raise the children when they were younger. And so she was making what, $1,500 a year doing ad hoc substitute teaching jobs. I don't see that as a significant distinction. The point is she obtained regular employment and that's what the Salvatore court found was ultimately contemplated. And again, on top of the Salvatore contemplation points about looking at the proportions of the JPA and the marital settlement agreement, you have the $65,000 imputation in this case, which wasn't going on there. That these two people expected her to make at least that much money by year five. And so she started making basically that in year three. I don't see how that her increase in income wasn't exactly contemplated and expected in the sense that Salvatore used. So I think you're strictly within de novo review because none of that is contested. Okay, thank you. We'll hear from your colleague, Nathalie. Morning, justices. May it please the court. I want to first address Justice Pichinsky's question. You haven't missed anything. You're exactly right. The joint parenting agreement provides that the parties have quote, the right to modify the schedule if needed. The right, not the option, the right. That didn't happen here. With respect to the issue of the number of overnights, there's nothing in the statute or in the case law that prevents the court, the trial court here from crediting Mr. Durda for the nights that were wrongly withheld from him. Nothing at all. The trial court heard Veronica's testimony that Mr. Durda is quote, not entitled to parenting time. It also heard her testimony that she withheld those six overnights from Eric, which coincidentally were just enough to bounce her or bounce him back down under the threshold, which provided a financial benefit to her because it was inconvenient, quote unquote, for her to be reasonable and accommodate the request for the changes as required by the joint parenting agreement. You know, the trial court here noted that this new statute can really become a numbers game. And us, you know, family law practitioners can really see that it acted to, and it saw that a numbers game was happening here. It acted to prevent the, or to ameliorate the effects of that numbers game by crediting Mr. Durda back the six nights he missed as a result of those being wrongly withheld from him. In terms of the time period at issue there, since we're talking about this issue, you know, whether you look at 2018 as an entire year, although the order was entered in October, or whether you look at the year immediately preceding the trial, Eric meets the threshold so long as the trial court is able to give back to him those six nights wrongfully withheld from him. And again, there's nothing in the statute or case law that prevents the trial court from doing that. The, you know, the issue of Veronica's motivations in withholding those nights was certainly disputed, and it's still disputed today. You know, her counsel argues that she made every effort, but just wasn't really under an obligation to accommodate him to the extent he desired. You know, our position would obviously be that she did it for a Machiavellian purpose. So that's not, and those facts are not undisputed, they're disputed. And the court's decision on this issue is reviewed for an abuse of discretion. The only mention of any time period in the statute itself is in section 3.7C, which is the section regarding child-related expenses. And it mentions, quote-unquote, the most recent 12-month period. Okay, so if we look at the most recent 12 months preceding trial, again, so long as the court is able to credit him for those six overnights he missed, Mr. Durdove is firmly within thresholds. You know, whether the trial court had the ability to examine the party's pattern and practice for the years on which it heard evidence, and to find that as a result of that pattern in practice, it believed that Eric would continue to take his parenting time through the rest of 2018. I don't see anything in the statute or in case law that forbids the court from doing that. But even if you don't want the court to make any assumptions about the rest of 2018, based on just the year preceding trial alone, the court was able to find that Eric met the threshold. Quickly, you know, counsel sort of diminishes the court's order when he notes immediately and upon beginning that it was only a one-page order. You know, the court had 39 transcript pages of oral ruling before that one-page order was crafted. So I don't think that gives it the credit it deserves. To address another point made by counsel, you know, he talks about the fact that he believes that Veronica's income was contemplated, you know, based on the fact that in year five of her maintenance, the parties agreed that she would make $65,000. You know, that was for maintenance purposes. The parties could have explicitly said that Veronica earning up to $65,000 a year would not constitute a substantial change for child support purposes. We do that all the time. That didn't happen here. That's not in their contract. And it could have been. Appellant argues that the parties contemplated Veronica finding employment. So her 3,700% increase in income did not constitute a substantial change. But she was already employed at the time of entry of judgment. In fact, the very first page of the party's marital settlement agreement provides Veronica is employed part-time outside the home as a substitute teacher. Sure, it was part-time, but I mean, I'm not gonna tell a part-time substitute teacher that, you know, she's not really working, particularly right now. You know, the difference with Salvatore, which they cite on this point, is that in that case, the wife only later became employed, which is why then the court looked at all sort of the ancillary documents and provisions, such as, you know, the parties being required to keep each other informed as to their place of employment, et cetera, to see if her employment was truly contemplated at the time the judgment was entered. Here, she was already employed. It wasn't an issue. Another difference with that case is that the court found that the husband's income went up only slightly, although he had actually alleged it went down. Here, Eric's income went up 20%, which is not insubstantial. The appellant also argues that Eric's 20% increase in income did not constitute a substantial change because of the true-up provision in the party's contract. That's not an argument that we ever heard at trial, but it's one they're making now, and they cite to Conley on that point, which is a third district case. I didn't find any first district case law finding that a true-up provision, you know, vitiates the possibility of any substantial change when a payor's income goes up, nor did I find another third district case besides Conley's so finding. So, you know, it seems to be a unique decision. But Conley's distinguishable from this case. The collective circumstances in that case were very different than those here. In that case, the mother's income went up by only 12%. Here, again, it's about a 3,700% increase in income. In that case, the father's income went up by 10%. We have double that here, which is 20%. The court said in paragraph 24 of that decision, the Conley decision, that the father's changes, the substantial changes he posited in that case, were not individually or collectively substantial, which is not true here. I mean, both parties' income went up much more in this case than it did in Conley. And the collective circumstance here is different. The appellant also argues, although he didn't really argue it today, but in his briefing, there's a large focus on this differential concept. They argued that at trial, and the court explicitly rejected it, citing to this court's decision in Singletary. In that case, the court urged the trial court, or I'm sorry, the mother urged the trial court to consider the large difference in the differential between the parties' incomes. Mom was pretty modest income, less than $100,000, whereas dad was earning, quote unquote, at least $300,000, had 2 million in the bank, drove a Mercedes and a Porsche, and had a four bedroom house. In that case, this court declined, even given a gulf of what it found to be at least $227,000 between the parties. It acknowledged dad's disproportionately greater income, but it found that support is the joint obligation of the parties, which is also what family law practitioners tell our clients. You know, if a child support payee makes $10 million, and a child support payor makes 10,000, well, you're still gonna pay your portion of your 10,000 because it's your joint obligation with your former spouse or with your child's, you know, parent. This concept of requiring a consideration, an acute consideration of this differential is not found anywhere in the statute. And there's no other first district case law touching on it besides Singletary, which rejected it. So it really, the argument depends on Conley and Salvatore. Conley does find that an increase in a custodial parent's income does not constitute a substantial change when it's small compared to an obligor parent's income, and it cites to Salvatore, it does find that. But again, Salvatore and Conley are both distinguishable from this case. Justice Lavin, you brought up the fact that the mother in Salvatore gained employment. That's true. Here, Veronica was already employed before entry of the judgment. In that case, in Salvatore, you know, after mother gained employment, she was grossing approximately $41,000 a year. There was no change in dad's income, and he made well over $400,000 a year. There was a, the difference was a multiple of 10. It was a very, very significant difference between the parties in that case. It just isn't present here. The trial court in Salvatore also explicitly found that the basis for the modification petition was the new statute, full stop. And in this case, the court found exactly the opposite. It saw the parties, it heard their testimony, and it found that Eric was not motivated by the passage of the new statute to seek a reduction in his support. In Conley, just briefly, the differences were similarly wide compared to this case. In that case, the mother's income went up modestly. The court characterized it 50%. And the father's income went up only 10%, as opposed to the 20% here. Just give me one second. All right, I don't have anything else further, Justice. No questions for me from either of my colleagues. No comments from me. Okay, we'll hear a rebuttal, Mr. DiDomenico. Thanks. I don't have much, just a couple of points. The singulatary case, we talked about that. I talked about that in the reply brief. That has no applicability here. That is a windfall case and a deviation case where there was a percentage order, and I think that case was from 1988. There was a percentage order, and the allegation there and the finding there was that the income went up to a level where the percentage order was becoming a windfall to the custodial parent. There's no allegation of that here. He didn't even allege that. There was no deviation here. There should have been. There was no allegation that the amount ordered under the original decree or any of the resulting amounts were ever going to be a windfall. So I don't see how that's possibly distinguishable or how that's possibly applicable here. You know, counsel suggests that, you know, the court, you know, found Mr. Gerdof to be a good citizen and, you know, that he wasn't trying to take advantage of the new statute. This is precisely what Salvatore said, right? Trying to take advantage of the fact that his ex-wife got a little job and started to rehabilitate herself to take advantage of the new statute. The court was very clear classifying this as gamesmanship and maneuvers like this. And that this is precisely why they cautioned against letting litigants like Mr. Gerdof get the benefit of the new statute when her obtaining employment was something that was clearly contemplated. And whether you want to look at the language that the Salvatore court looked at in the settlement agreement or the joint parent agreement, which is identical to the language in this case, whether you want to look at, they all agreed that she would start making $65,000. The fact that she started to make $58,000 is not a change in circumstances. And we can skip all the rest of this case because if there's no change in circumstances, there is no modification. And again, it just strains credulity to me, at least, to say that Mr. Gerdof was not trying to take advantage of the new statute. Clearly he was. Clearly Veronica obtaining a little job and becoming self-sufficient in year three after the divorce was just a pretext to get the benefit of the new statutes. You know, counsel keeps talking in terms of percentages, talking about percentages. We'll talk about actual dollars. His income is still far, far, far in excess of hers. And she can't meet, she couldn't meet the needs of the children on the maintenance that she was getting, which is now substantially reduced and on the support that she was getting, which was substantially reduced to live in the school district that these two people agreed was in the best interest of their children. And that's- If you could wrap up, we'd appreciate it. Fair counsel. Yes, Justice Levin. And that's what I just wanted to point out again is that nowhere in counsel's argument did you hear about the best interest of the children. Did you hear about, does this order serve the best interest of the children? That was the circumstances of change sufficient enough to take away from the children because it isn't Mr. Durdoff's money. It isn't Veronica Durdoff's money. It is for these kids. And it is these kids that suffer from this kind of reduction for what amounts to a very nominal reason. And I'd ask you to please keep that in mind. And Justice Levin, I yield the balance of my time. I ask for a straight reversal. Okay, thank you very much to both sides. We appreciate the briefing and the passion of the arguments on both sides and the command of the relevant case law. We will take it under advisement and issue our decision in the coming weeks. We are adjourned.